UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KANAY A. MUBITA,<br><br>        Plaintiff,<br><br>v.<br><br>CORRECTIONS CORPORATION OF AMERICA and ACIL THACKER,<br><br>        Defendants. | Case No. 1:13-cv-00282-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

Plaintiff Kanay A. Mubita is a prisoner in the custody of the Idaho Department of Correction (IDOC) currently incarcerated at Idaho Correctional Center (ICC), a private prison operated by Corrections Corporation of America (CCA) under contract with the IDOC. Plaintiff filed a civil rights complaint in June 2013, alleging that Defendants CCA and CCA employee Acil Thacker have violated his Eighth Amendment right to adequate prison medical care based on Defendants' alleged failure to properly treat Plaintiff's swollen ankles, a side effect of his blood pressure medication, as well as his migraine headaches. Plaintiff also states that he has not seen a doctor since February 2, 2013. (Compl., Dkt. 3.)

**MEMORANDUM DECISION AND ORDER - 1**

On September 25, 2013, the Court entered its Initial Review Order, determining that "the best way to determine whether Plaintiff's Complaint may proceed past the initial review stage is for Defendants to inform the Court of the circumstances surrounding Plaintiff's medical treatment at the prison"; thus, the Court ordered Defendants to prepare a *Martinez* report. (Dkt. 8 at 7.) *See Martinez v. Aaron*, 570 F.2d 317, 318-19 (10th Cir. 1978) (per curiam); *see also In re Arizona*, 528 F.3d 652, 656 (9th Cir. 2008) (per curiam) (upholding the district court's order requiring defendants to submit a *Martinez* report). Defendants were required to "(1) ascertain the facts and circumstances underlying the complaint; and (2) consider whether any action can and should be taken by the institution or other appropriate officials to resolve the subject matter of the complaint." (*Id*. at 8) (internal quotation marks omitted). Defendants have now filed their *Martinez* report (Dkt. 10), and Plaintiff has filed a response (Dkt. 14).

Having carefully reviewed the record, and having determined that oral argument is unnecessary, the Court enters the following Order dismissing Plaintiff's case with prejudice for failure to state a claim upon which relief can be granted.

1. **Standards of Law**

The Court is required to review complaints filed in forma pauperis, or those filed by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity, to determine whether summary dismissal is appropriate. The Court must dismiss a complaint or any portion thereof that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief

**MEMORANDUM DECISION AND ORDER - 2**

from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

A complaint fails to state a claim for relief under Rule 8 of the Federal Rules of Civil Procedure if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In other words, although Rule 8 "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (internal quotation marks omitted). If the facts pleaded are "merely consistent with a defendant's liability," the complaint has not stated a claim for relief that is plausible on its face. *Id.* (internal quotation marks omitted).

Plaintiff brings his claims under 42 U.S.C. § 1983, the civil rights statute. To state a valid claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by the conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Prison officials are generally not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). "A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a

**MEMORANDUM DECISION AND ORDER - 3**

sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). This causal connection "can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Id.* at 1207-08 (internal quotation marks, citation, and alterations omitted).

To succeed on his claims against CCA as an entity, Plaintiff must meet the test articulated in *Monell v. Department of Social Services*, 436 U.S. 658, 690-94 (1978); *see Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (applying *Monell* to private entities). Under *Monell*, the requisite elements of a § 1983 claim against a municipality or private entity performing a state function are the following: (1) the plaintiff was deprived of a constitutional right; (2) the municipality or entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001).

An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-168 (1970)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Further, a municipality or private entity performing a state function "may be held liable under § 1983 when the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010).

Plaintiff's claims implicate the Eighth Amendment to the United States Constitution, which protects prisoners against cruel and unusual punishment. To state a claim under the Eighth Amendment, a prisoner must show that he is "incarcerated under conditions posing a substantial risk of serious harm," or that he has been deprived of "the minimal civilized measure of life's necessities" as a result of Defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires a plaintiff to satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012). The Eighth Amendment includes the right to adequate medical care in prison,

**MEMORANDUM DECISION AND ORDER - 5**

and prison officials or prison medical providers can be held liable if their "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Regarding the objective standard for prisoners' medical care claims, the Supreme Court of the United States has explained that "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The Ninth Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain[;] . . . [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain . . . .

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992) (internal citations omitted), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

As to the subjective standard, a prison official or prison medical provider acts with "deliberate indifference . . . only if the [prison official] knows of and disregards an excessive risk to inmate health and safety." *Gibson v. Cnty. of Washoe, Nev.,* 290 F.3d 1175, 1187 (9th Cir. 2002) (citation and internal quotation marks omitted). "Under this standard, the prison official must not only 'be aware of facts from which the inference

**MEMORANDUM DECISION AND ORDER - 6**

could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Farmer*, 511 U.S. at 837).

In the medical context, a conclusion that a defendant acted with deliberate indifference requires that the plaintiff show both "a purposeful act or failure to respond to a prisoner's pain or possible medical need and . . . harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05 (footnotes omitted).

Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). "[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk' to the prisoner's health." *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (alteration omitted) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

2. **Discussion**

The *Martinez* report and its supporting documentation (Dkt. 11) show that

**MEMORANDUM DECISION AND ORDER - 7**

Plaintiff's claims of inadequate medical treatment are without merit. Defendants have set forth the facts surrounding Plaintiff's medical care clearly and accurately in the report:

> Mr. Mubita submitted a Health Services Request on February 10, 2013 reporting that his ankles were swollen and requested to see a medical provider. He was seen by a registered nurse on February 12, 2013 who noted some swelling and that one of his blood pressure medications had recently been increased. She advised Mr. Mubita to elevate is his legs and increase his fluids. She also ordered a follow-up visit with a medical provider.
>
> Less than two weeks later, Mr. Mubita submitted another Health Services Request complaining about the swelling in his ankles and asking about his appointment with a medical provider. The response to Mr. Mubita was that he had been referred to a medical provider for this issues. Six days later, Mr. Mubita submitted an Offender Concern Form, addressed to Mr. Thacker, stating that he had not had his appointment with a medical provider, and the reply was that he was scheduled for an appointment on March 4, 2013. On March 4, 2013, Mr. Mubita was seen by a medical provider. During this visit, Mr. Mubita was prescribed HCTZ to decrease the swelling and it was noted the medication might also slightly decrease his blood pressure. Mr. Mubita was scheduled to see a medical provider again on March 8, 2013 for his Chronic Care Clinic appointment. Mr. Mubita refused the visit. Then, on March 14, 2013, Mr. Mubita saw Dr. Agler; they discussed his high blood pressure medications and side effects he was experiencing, such as swelling in his feet and light-headedness. Dr. Agler discontinued two of his medications and ordered a follow-up visit for one month later.

Subsequently, on April 3, 2013, Mr. Mubita submitted a Health Services Request stating that he thought his blood pressure medication was continuing to cause his ankles to swell, and his condition was not improving. The following day he saw a registered nurse, who noted his complaints about the swelling and that Mr. Mubita had gained fifteen pounds in two months. The nurse advised him to increase his activity level to decrease the swelling and his weight and he was also referred to a medical provider. On April 30, 2013, Mr. Mubita submitted an Offender Concern Form, addressed to Mr. Thacker, stating that he had not seen a medical provider for his high blood pressure. The reply was that he had been scheduled for an appointment. On May 15, 2013, Mr. Mubita had his Chronic Care Clinic appointment with Dr. Agler, who switched him to a new blood pressure medication and ordered a follow-up appointment for two months later. On July 12, 2013, Mr. Mubita had his follow-up Chronic Care Clinic appointment with Dr. Agler. At that appointment, Mr. Mubita stated that he had only started taking the previously prescribed blood pressure medication three weeks prior to the appointment. Dr. Agler added a new blood pressure medication to his regimen; he also ordered another follow-up appointment for one month later.

On July 30, 2013 and August 27, 2013 Mr. Mubita had visits with medical providers. On September 9, 2013, Mr. Mubita did not attend his appointment with the nurse practitioner. However, on September 17, Mr. Mubita had his Chronic Care Clinic appointment, at which time it was noted that his blood pressure was well controlled and he was scheduled for a follow-up appointment for three months later.

In sum, since the date Mr. Mubita states in Complaint until October 11, 2013, he has seen a medical provider and specifically discussed his high blood pressure and related swelling of his ankles five times. He also saw a medical provider for other issues an additional two times. Also, Mr. Mubita did not attend two other scheduled appointments with medical providers. Moreover, three of his appointments

**MEMORANDUM DECISION AND ORDER - 9**

> regarding his high blood pressure were before he filed his
> Complaint on June 26, 2013.
>
> Although unrelated to the actual scheduling of medical
> appointments, and therefore unrelated to any actions of
> Defendant Thacker, Mr. Mubita's treatment for high blood
> pressure has been adjusted or changed five times since
> February 3, 2013. Further, it is Dr. Agler's opinion to degree
> of medical certainty that, as of Mr. Mubita's September 19,
> 2013 Chronic Care Clinic visit, Mr. Mubita's blood pressure
> is well controlled and his side effects are minimal.

(*Martinez* Report, Dkt. 10, at 3-6) (internal citations omitted).

Thus, Plaintiff's allegations that he has not received any medical treatment since February 2013 are demonstrably false. The course of treatment Plaintiff has received—both before and after he filed his Complaint—does not constitute a violation of the Eighth Amendment, as there is nothing in the records supporting a plausible inference that Defendants deliberate disregarded a substantial risk of serious harm to Plaintiff's medical needs or that CCA has a policy or custom of denying prisoners adequate medical care.

Plaintiff also claims that he needs more Excedrin to treat his migraine headaches, as Excedrin is the only medication that works. Plaintiff is allowed 60 tablets of Excedrin each month, which he self-administers. (Agler Decl., Dkt. 10-3, ¶ 18; Compl. at 5.) As Dr. Agler has attested,

> Daily usage of a pain reliever such as Excedrin can
> have many negative effects. It can cause rebound headaches,
> which are where the regular use of the medication can start
> causing headaches. Additionally, Excedrin contains caffeine,
> which can increase blood pressure. It can also lead to a

**MEMORANDUM DECISION AND ORDER - 10**

> dependence, and when the caffeine is removed there can be an increase in headaches. Lastly, taking four tablets of Excedrin each day can put stress on the liver because the Tylenol component is processed through the liver.

(Agler Decl. ¶ 25.) Plaintiff's disagreement with his medical providers over the appropriate dosage of Excedrin is simply that—a disagreement, which is not actionable under § 1983. *Sanchez*, 891 F.2d at 242.

Plaintiff's response to the *Martinez* report includes vague allegations and recites several legal standards, but it does not identify any of the specific facts set forth by Defendants as inaccurate. Because Plaintiff states in his Complaint that he had not seen a "doctor" since February 2013, he may be arguing that the Eighth Amendment requires him to be evaluated by a *physician*, rather than another medical provider such as a nurse practitioner or a physician's assistant. However, there is no constitutional right to a medical provider of one's own choice. *Roberts v. Spalding*, 783 F.2d 867, 870 (9th Cir. 1986) ("A prison inmate has no independent constitutional right to outside medical care additional and supplemental to the medical care provided by the prison staff within the institution."). Further, the Eighth Amendment does not provide a right to a specific treatment. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) ("[The plaintiff] is not entitled to demand specific care. She is not entitled to the best care possible. She is entitled to reasonable measures to meet a substantial risk of serious harm to her.").

For the foregoing reasons, the Court concludes that Plaintiff's Complaint fails to state a claim upon which relief may be granted and will dismiss this case with prejudice.

## ORDER

**IT IS ORDERED** that this entire action is dismissed with prejudice for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

DATED: **February 14, 2014**

Honorable Edward J. Lodge
U. S. District Judge